Good morning, your honors. May it please the court. Counsel, my name is Gregory Scott. I am here on behalf of Monya Townsend. I would like to reserve two minutes for rebuttal, please. Your honor, this is a case that is clearly on all fours with Florida v. JL. What we've got here is an anonymous tip that there is some sort of an undisclosed dispute that there is a possibility that there is a black man with a gun. Didn't JL stop, though, with the anonymous tip? I mean, there was nothing beyond an anonymous tip in JL. That is correct, and there is nothing beyond that here either. In JL, the officers were told that at a particular location there was a black man wearing a plaid shirt and had a gun. Officers arrived there. They found three black males, one of them wearing a plaid shirt. They found a gun. But in this case, the officers arrived. They went to see. They didn't immediately approach the folks from what they didn't immediately approach. They observed some things. When they drove up, the hotel person was pointing towards the car, which corroborated or validated what the initial report was. And then when they were looking, they saw some activity that was suspicious to them, especially in light of what they heard. So couldn't their observations and what they saw, especially when they thought they saw somebody who had his hand on a weapon possibly, provide the sufficient suspicion necessary for this Terry stop? No, Your Honor. In fact, in this case, the only thing that they observed was the same information that had been given by the anonymous tip. There was nothing that corroborated any of that, and there was nothing that was indicative of the reliability of the information. In other words, anybody who was observing that could have made that phone call. And it did not establish any type of basis of knowledge. There was no predictive indicia there. It merely could have been a stranger driving by that said, you know, I see in my briefing, I pose this hypothetical. There is a silver Mercedes driving down I-5 with a black man driving, and I think he might have a gun and drugs. That in and of itself is not sufficient. If we find that, in fact, there is a silver Mercedes driven by a black man on I-5, that is not sufficient indicia to stop. But there was a little bit more here that I think might make the difference, and I want to give you a chance to respond to that. Because when they got there, they didn't just immediately stop this car. They observed. They saw some activity that they thought was suspicious in light of what they heard. Their common knowledge and experience is an important factor here as well. They were familiar with the scene of the hotel because they had calls there before of disruptions and arguments. And so doesn't that get credited at all? Actually, Your Honor, I disagree with the statement that they did not immediately stop. In fact, I believe that the record establishes that they did immediately stop. They arrived and immediately drew their weapons and began telling the individuals to show their hands and to get out of the car. Well, as they approached, that's fair. As they approached, they made observations, and then they got out of the car and told the individuals to get out of their car. And then the individuals at that point didn't immediately comply. And is that not credited at all? Your Honor, I don't believe that it is. And the reason I say that is because there was a lot of things going on at that time. All of the officers conceded that. The officers testified that the car rolled forward maybe 5 to 10 feet. One of them said 30 feet, perhaps. One of them said just a few feet. So it was something that happened very quickly. So there's nothing in that that distinguishes this from the same facts, such as a black man wearing a plaid shirt at a given location in a bus stop. That's the same thing that we have here. We have a black man wearing a dark shirt with a white undershirt in a burgundy SUV, and that's all we've got. What did we do with Hollenquist? With Hollenquist, Your Honor, this court found that it was on all fours with J.L. Hollenquist was actually the driver, right? No, sir. What was his position in the vehicle? He was the gentleman who was gesturing and standing halfway in and halfway out of the vehicle. This court overturned and suppressed the evidence. Go ahead. So in J.L., if they had arrived at the bus stop and they had seen a uniformed bus driver pointing at the individual who had been identified and they couldn't see where the hands were, aren't those all additional facts? In other words, that we didn't have the gesticulation, the crowd gathered around, the failure to comply. None of those were facts that occurred in J.L. Wouldn't that make these circumstances different? And don't we have to look not just at the initiating anonymous tip, which I agree would not have been sufficient, but the totality of the circumstances? Isn't that what the Supreme Court tells us to do? Yes, Your Honor. The Supreme Court tells us to look at the totality of the circumstances, but it also tells us that we have to have an articulable facts that support a reasonable suspicion. And there was none of that here. In fact, in Morales, this court had previously ruled that when you predict that a car is driving between Spokane and Missoula, Montana, and it may have drugs in it, they find the car, it's headed in the right direction, they follow it for 30 or 40 minutes. That is not sufficient to establish probable cause for the stop. In that situation, they did find drugs, but what's found afterwards doesn't justify the initial stop. So in this case, there is nothing that is predictive. Morales, this court ruled that there has to be something that is predictive in order to establish the reliability of the tip. There is nothing here. The fact that the officer sees what he is told he will see is not corroborative of the underlying suspicion of criminal activity. In fact, all of the officers testified in the district court, they did not have any suspicion of any particular crime. They just came to see what they would find. That's not appropriate. Well, it was appropriate for them to go and see what they would find. I agree, Your Honor, but it's not appropriate for them to stop at gunpoint, take these people out, and search the car. Well, maybe not just on what the facts they had at that time, but maybe perhaps based on what they observed, there might have been enough. But I'm just curious, if we do think that this was an appropriate terror stop, do you agree that the firearm that was found on the seat was in plain view, if they were lawfully present? That's a tough question, Your Honor. I don't want to concede that. I understand. Well, the weapon may have been in plain view, but there was no – for plain view purposes, there's no – it wasn't obvious that it was an instrument of a criminal activity. That is absolutely correct. And in order to be in plain view, and it has to be recognized as contraband, and there's nothing here to indicate that. Your Honor, I see that I am down to – Would you like to say – just state the balance at the time. Thank you, Your Honor. Please, the Court. Alexander Eckstrom, Assistant United States Attorney, on behalf of the Appellee United States of America. The government understands that we have the inverse burden here to persuade the court, not that the case is J.L., but is actually more similar to Alabama v. White. But to deal first with the issue regarding the other panel, it is true that in an unpublished opinion in the Hollandquest matter, a divided panel did reverse the initial denial of suppression. However, as the defendant indicated in his brief, these two different appeals, which are on two different records, should be treated separately. It's the last paragraph of that. Were there any facts that were different presented to the district court in Hollandquest or different from here? The record was different. How was it different? There was additional detail in Hollandquest regarding the individual who in fact placed the call from the Red Lion. However, the court in Hollandquest discounted that information and treated it as if it were an anonymous call. So while there were factual differences, I would submit that in application the court treated it in a similar fashion. Was there a petition for rehearing filed in Hollandquest? No. A protective appeal was filed, the criminal division was consulted, and the government provided notice that it was withdrawing the protective appeal. So that case is over with. It is. Wouldn't it be kind of odd for us to come out with a different result? Well, I don't know how to respond to the word odd. It would be unusual, wouldn't it? I have never seen it before, Your Honor. How could we justify it? Because it is a memorandum unpublished decision that is split, this court could be convinced by the government's argument. Don't you think that would be somewhat unfair? From my perspective, no, Your Honor. Why not? These two individuals were in the car at the same time, correct? They were. Same circumstances, correct? They were. And with respect to one defendant, the evidence is suppressed? Same evidence, correct? Similar evidence, Your Honor. What's different? In this case, it's an unpublished decision. No, no. What was the evidence that was suppressed in the other case? The evidence of another firearm found in the driver's side backseat passenger in a search that followed the search in this case. That strikes me. Why isn't this case just like J.L.? No, it isn't, Your Honor. And the reason that it's different is, first of all, the timing that's involved. As the record indicates, we have a short response time, according to Officer McClintock, approximately a minute, according to the reserve officer with him, two to three, and an additional 30 seconds involved from the time that the first exited the vehicle and the time that the individuals in the vehicle actually complied with commands and stopped the vehicle. Let me ask you this. What was the predictive information that the informant, that the caller relayed to the police station? That there was a dispute at the Red Lion. What's predictive about that? That when the officers arrived, they found an individual engaged in, and this was observed physical conduct because they could not hear when they first arrived, of an individual gesticulating and what appeared to be yelling. And then, importantly, from the government's perspective, the fact that individuals who, due to their nature of their dress and the fact that they were recognized by Officer McClintock, were known to be the security folks or responsible individuals for that place of business. Now, if the officers had just appeared on the scene, that's what they would have observed, correct? Anybody would have observed that. Yes. They would have observed that, but what the officers knew and the officers' experience that made this different was that they knew the individuals in the shirts, who they knew personally, were the security individuals, essentially validating the idea that this is the individual who is the problem. This is the source of the dispute. This is the individual who may have the firearm. What was the criminal activity that was afoot that they witnessed? Officer McClintock, when questioned on cross-examination, was asked, and he was asked the question whether there was specific criminal activity, and what he indicated at Excerpt of Record 56, he was asked, you weren't investigating any specific crime, but his answer is instructive. He said, well, yeah, guy with a gun and disorderly conduct. And in this instance, there... Was he waving the gun? He was not. The gun was not observed. What was the disorderly conduct? The disorderly conduct would have to be judged by the Pasco Municipal Code. Was it the waving of the hand or pointing the finger or something? It would have to be that observed physical conduct combined with the report that would give them cause to further investigate. How do you distinguish the Morales case? I think that's the case they're opposing counsel is talking about. Go ahead. The government distinguishes it in this way. While it was also an anonymous tip, in this case, due to the fact, presumably due to the window tint, the reason for the stop that was itself not supported, the officers in that case were not able to confirm any of the information about the identity of the individuals in the vehicle prior to the stop. In this case, what we had was a description of individuals that matched. We had behavior described, the dispute, the disturbance, however it wants to be termed, that was, again, consistent with what was observed. Did the tip include that there was a disturbance in progress? I didn't see that in the record. And, again. I thought it was just a man who had a gun. Officer McClintock at, let's see here. Officer McClintock indicated a man with a gun. And if I can find it in the record. Yes. At Executive Record 23, when asked to describe the nature of the call, Officer McClintock indicates some sort of dispute was what came over the call. And he indicates that there was further information about the dispute that he couldn't recall, and he indicated that that was a function of the time between the dispatch and the time in which he arrived and his attention being distracted by arriving and seeing what was on scene. Did I answer the Court's question? You did. How about was the firearm, when it was found, in plain view? And could the officer seize it? Opposing counsel indicates that it wasn't obviously contraband. The government would rely on the Gann and Stafford cases, which we cited in our brief. Gann first for the proposition that the item may be seized if suspicious. Stafford, a sawed-off shotgun case, for the proposition that the officer don't need to know that it's illegal. But further, in this instance, officers are responding to a report of a dispute, potential disorderly, where a firearm is involved. The government would submit that under those facts it's reasonable to take control of the firearm. Did they seize it before running the criminal records for the individual? I don't believe that the record speaks to that. I got the impression they took it right at the time. They looked in the car. There was the gun. It was on the floor. Yes. They seized it. Your Honor is correct. And then they later ran all the stuff and they realized that he was a felon. He had a prior felony conviction. Factually, it would have been impossible for them to run prior to the seizing of the gun. While it's not in the record, it follows. And so for safety reasons, is that a possibility for seizing the weapon? Certainly for safety reasons. It's also suspicious under the circumstances. It's also related to the reason for the call. Well, they already had him in custody, correct, when they seized the gun? Yes, they did. They put him in the backseat of the car, as a matter of fact, correct? They did put him in the backseat of the car. Yes, they did, Your Honor. They put him in the backseat of the car. Because one of the issues here was whether or not they exceeded the scope of the terrorist attack. Right. That was one of the three steps taken. And, again, the government would rely on gang shattering. I understand. Okay. I have nothing further unless the Court has questions of me. Thank you. Thank you. Thank you, Your Honors. Counsel argued that Officer McClintock had testified that there was a dispute, and it involved a gun, and that's why he was there. In fact, on pages 56 and 57 in the record, he specifically stated that he had no crime specifically in mind. I asked him. He agreed with me. It is not illegal to have a gun. It is not illegal to argue. It is not illegal even to have a heated conversation. And, in other places, they also conceded it is not illegal to be a black man with a gun. The tip came in that there may be a black man with a gun. Dispatch also indicated prior to the officers arriving that no gun had ever been seen. It was not used. It was not displayed. There just was some suspicion that someone said somebody thought they might have a gun. That's it. That is not the proof. So, in your view, the officers should have done nothing. With the report from dispatch that there was a possible dispute or disorderly conduct possible dispute, someone is reporting that someone in those persons may have had a gun and gave a description. They knew the place where they were going had issues before in terms of altercations or often getting calls. Is it your view they should have just either not gone there or showed up and then just done nothing or waited? Or what's your view of what should have happened? Your Honor, you're asking me about… Especially as they arrive, they see what they see, the activity in the car and the person they think might be having a gun on his person. They should have just stood there. Your Honor, you're asking me a policy decision. And in policy, I think that the… I'll try and answer the Court's question, but I also want to explain why I think it… Well, as a policy matter, Your Honor, I think they should have come up. They should have asked what's going on. If there was a problem, they could deal with that. Instead, these officers came up without ever asking anything, drew their weapons immediately, and ordered the passengers in the vehicle out of the vehicle at gunpoint, placed them in handcuffs, and put them in the back of the car, the cruisers, and then searched the car. Now, I understand the concern with some individuals regarding firearms. That specific issue was addressed by the Supreme Court in J.L. The Supreme Court specifically ruled that there is not a firearm exception to the Fourth Amendment. Just simply because we say that there is a gun involved, that does not rise to the level of justifying a stop and a search. That's the argument that I am making here, and I believe that's the question that the Court has articulated. Is it sufficient just because there is a gun, and because two people are arguing, isn't that sufficient? And the Supreme Court has said, no, that is not. White does not apply. If I may, I know I'm over time. White does not apply because in White it was a very clear predictive of future events. None of that is present here. This case is on all fours with J.L., and this Court should follow its previous ruling in the Holinquist case. Thank you. Thank you. Thank you. Thank you, Counsel. We appreciate your arguments. The matter is submitted. Thank you.
judges: Tucker, Paez, Murguia